**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

Filed / Docketed
October 14, 2008

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **MARKLE, DAVID GENE,** | ) | **Case No. 08-10109-R** |
| | ) | **Chapter 7** |
| Debtor, | ) | |
| | ) | |
| **MONARCH CEMENT COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. No. 08-1033-R** |
| | ) | |
| **DAVID GENE MARKLE,** | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (Adv. Doc. 10) (the "Motion"), filed on June 20, 2008, by Defendant David Gene Markle ("Markle"), and the Response to Defendant's Motion for Summary Judgment (Adv. Doc. 20) (the "Response"), filed on July 21, 2008, by Plaintiff Monarch Cement Company ("Monarch").

**I.    Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a) and 157(b)(2)(I), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**II.    Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056. A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." Wright *ex rel.* Trust Co. of Kansas v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001), *citing* Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler, 144 F.3d at 670, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the movant has met its initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Spaulding, 279 F.3d at 904, *citing* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Liberty Lobby, 477 U.S. at 248. The non-moving party may not simply rest upon its pleadings to satisfy its burden. Liberty Lobby, 477 U.S. at 256. Rather the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Mitchell v. City of Moore, 218 F.3d 1190, 1197 (10th Cir. 2000), *quoting* Adler, 144 F.3d at 671. To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." Adams v. American Guarantee and Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (quotations and citation omitted).

2

"[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249.  Reasonable inferences that may be made from the proffered evidentiary record should be drawn in favor of the non-moving party.  See Adams, 233 F.3d at 1246.  However, "[i]f the [non-moving party's] evidence is merely colorable or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.  Conversely, even where a movant's facts are undisputed, if two reasonable factfinders could reach different conclusions or "ultimate inferences" from the  undisputed facts, summary judgment is not warranted.  See Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1382 (10th Cir. 1980).

When, as here, the movant is the defendant, the movant may sustain its burden either by pointing out a complete lack of evidence to support at least one element of the plaintiff's claim, or by establishing with undisputed evidence all elements of an affirmative defense.

## III.    Contentions of the Parties

Monarch filed a Complaint alleging that Markle, a Chapter 7 debtor, owes Monarch a debt resulting from fraud, larceny, embezzlement, defalcation in a fiduciary capacity and/or intentional injury to property, and therefore such debt is non-dischargeable under Section 523(a)(2), (a)(4) and/or (a)(6) of the Bankruptcy Code.  Monarch alleges that its claims arise from  (1) Markle's breach of a Confidentiality and Non-Compete Agreement, which Markle executed in connection with Markle's sale of a majority interest in Tulsa Dynaspan, Inc.

3

("TDI") to Monarch, and (2) Markle's fraudulent purchasing and billing practices while acting as TDI's president and director.

In his Motion, Markle contends that Monarch does not have a claim against Markle for fraud, larceny, embezzlement, defalcation in a fiduciary capacity, or any other intentional tort  because although the allegations in the Complaint describe injuries to TDI, none of the conduct described was committed against Monarch or injured Monarch, other than injury to the value of Monarch's TDI stock, which is not compensable under applicable law.  Markle argues that Monarch, as a shareholder of TDI, is not the real party in interest to a suit alleging injuries to TDI, and TDI need not be joined to this proceeding as real party in interest because it has commenced its own adversary proceeding in which TDI alleges facts that are identical to the facts alleged by Monarch and seeks relief identical to the relief sought by Monarch.

Monarch contends that it is entitled to relief independent from the relief to which TDI may be entitled because Markle owed fiduciary duties directly to Monarch under the terms of the Confidentiality and Non-Compete Agreement.  Monarch also claims that Markle's refusal to admit to the allegations in the Complaint creates genuine issues of material fact which preclude summary judgment.

**IV.     Record on Summary Judgment**

    A.     <u>Uncontroverted Material Facts</u>

The following material facts are conceded solely for the record on summary judgment:

On June 6, 1986, Monarch purchased a majority interest (51%) in TDI, an Oklahoma corporation, from Markle, and later acquired additional stock of TDI.  Motion, Statement of

Undisputed Material Facts (hereinafter, "SUF"), ¶ 1; Response, Response to Debtor's Allegedly Uncontroverted Material Facts (hereinafter, "RSUF"), ¶ 1.  Markle (or more accurately, his bankruptcy estate) owns 19.82% of TDI's stock.  Id.  Markle was president of TDI before the sale of stock to Monarch and continued as president until 2005.  Id.  In connection with the purchase and sale of the stock, Monarch, Markle and TDI entered into a Confidentiality and Non-Competition Agreement (the "Agreement").  SUF ¶ 2, Motion Exh. 2; RSUF ¶ 2.[1]

The Agreement recites that (1) prior to the sale, Markle owned 98% of TDI's stock; (2) Markle sold a fifty-one percent stake in TDI to Monarch; (3) Monarch caused TDI to enter into an employment agreement with Markle; and (4) "an essential element of the purchase by Monarch of the stock of [TDI] and the execution by [TDI] of the Employment Agreement consists of Markle's covenant to Monarch and [TDI] that Markle will not, for a period of five (5) years from and after the date of the termination of Markle's employment by [TDI], engage in certain activities in competition with [TDI]."  Agreement at 1.  The terms of the Agreement provide that after Markle's employment is terminated, he would not own or participate with any entity engaged in competition with TDI's business for two years and that he would not, in the one year period prior to termination of his employment, divert any business from TDI or entice employees away from TDI for employment in a business

---

[1] Monarch admits that the Agreement attached to the Motion as Exhibit 2 is a true copy of the Agreement referred to in paragraph 9 of the Complaint.  Motion at 5, ¶ 13; Response at 3, ¶ 13.

in competition with TDI.[2]  Agreement, ¶ 1.  In addition, Markle agreed to "hold in confidence all knowledge or information of a confidential nature with respect to [TDI's] business," including trade secrets used in "development, improvement, manufacturing and marketing of [TDI's] products" and any other non-public information learned by Markle while employed by TDI.  Agreement, ¶ 2.  The Agreement provided that in the event of a breach by Markle, damages would be difficult to ascertain and TDI would be entitled to injunctive relief.  Agreement, ¶ 3.  Finally, the Agreement provided–

> The foregoing agreements of Markle with [TDI] are not in lieu of or exclusive of any other obligations or duties of Markle to [TDI], whether express or implied in fact or in law, with respect to the subject matter of this Agreement.

Agreement, ¶ 4.  The Agreement is governed by the laws of the State of Kansas.  Id.

Monarch alleges in its Complaint that in 2003, while Markle was president of TDI, he and other officers of TDI formed two limited liability corporations, and that these two entities purchased materials TDI required for operating its business at market prices and sold the same materials to TDI at inflated prices, thereby generating handsome profits for the entities (and ultimately for their members) at TDI's expense.  Monarch contends that Markle and the other officers operated these "ghost vendors" from TDI's offices, using TDI's resources.  Although Markle does not admit the allegations in the Complaint, for the purposes of the Motion, Markle requests that the Court assume that the allegations of the Complaint are true.  Essentially, Markle contends that even if the allegations are true, they do not state a claim for a non-dischargeable debt in favor of Monarch.  Accordingly, the

---

[2]Although the recital portion of the Agreement refers to a five year non-compete agreement, the terms of the Agreement actually prohibit competitive activity for one year before and two years after termination of Markle's employment.

Court will treat the allegations as undisputed solely for the purpose determining whether Monarch has alleged a cognizable claim.[3]

The "scheme," as alleged by Monarch, and as found by a Tulsa County District Court in an Order Granting TDI's Motion for Summary Judgment on Certain of its Counterclaims Against Plaintiffs and Granting TDI's Motion for Summary Judgment on All Plaintiffs' Claims ("TDI Order") dated May 30, 2007 (Response, Exh. A, the admission of which was not opposed by Markle),[4] was executed as follows: Markle, Mr. Evilsizer (TDI's Vice President), Mr. Bobbit (TDI's Vice President), and Ms. Martin (TDI's Secretary and Treasurer) (the "Officers") were the four highest ranking employees of TDI, made the day-to-day decisions for TDI, and owed fiduciary duties to TDI.  TDI Order, ¶¶ 3-7.  Markle and the Officers formed General Building Systems, LLC ("GBS") in October 2003, and each owned an interest in GBS.  Id., ¶ 8-9.  GBS sold materials to TDI.  Id., ¶ 10.  Markle and the Officers "never disclosed their involvement with GBS . . . or disclosed that they sought to profit personally from TDI jobs."  Id., ¶ 10.[5]  Markle and the Officers used TDI's resources

---

[3]Monarch argues that because Markle "refuses to admit that he was involved in this scheme to defraud TDI, clearly material factual disputes remain to be resolved at trial." Response at 22. Markle is entitled to conditionally concede the facts of the alleged "scheme" for the purpose of showing that he is entitled to judgment as a matter of law.  See WRIGHT, MILLER & KANE, 10A FED. PRAC. & PROC. § 2720 ("It should be remembered that a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of his own motion.").

[4]The Court makes no finding concerning whether the TDI Order is a final order, or whether it has any offensive collateral estoppel effect with respect to claims asserted by Monarch.

[5]The TDI Order does not state *who* was not advised of Markle's and the Officers' involvement with GBS, but the Court will assume that the fact was not disclosed to those TDI's directors and shareholders (including representatives of Monarch) that were not Officers. Obviously the parties involved had such knowledge.

for the benefit of GBS.  Id., ¶ 12.  All of GBS's business was performed, and all of GBS's records were kept, at TDI's offices; TDI's purchase order form was copied for use by GBS, and Markle and the Officers used TDI's phones, computers, network and internet accounts, and proprietary and confidential information to carry on GBS's business. Id., ¶ 11-12. GBS's sole customer was TDI.  Id., ¶ 13.  TDI and GBS sent purchase orders to outside vendors ("Suppliers) for materials needed on TDI's jobs. Id., ¶ 14.  Markle and the Officers prepared purchase orders from TDI to GBS for the same materials GBS ordered from the Suppliers, and prepared invoices in which GBS billed TDI for the materials obtained by GBS from the Suppliers. Id., ¶ 15-16.  Markle and the Officers approved GBS's invoices for payment by TDI, and endorsed checks from TDI to GBS. Id., ¶ 17-19. TDI paid GBS before GBS paid the Suppliers. Id., ¶ 20. When invoices from Suppliers arrived at TDI's offices, Markle and the Officers intercepted them and had GBS pay them. Id., ¶ 21.  By buying supplies required by TDI and reselling them to TDI, GBS earned gross profits of $85,725.00 in 2003 and $385,983.00 in 2004; these profits were distributed to Markle and the Officers as members of GBS.  Id., ¶ 22-23.

In December 2003, Markle and the Officers (other than Ms. Martin) formed another entity–ENCO Concrete, LLC ("ENCO").  Id., ¶ 24-25.  ENCO operated in the same manner as GBS—that is, ENCO used the resources of TDI to purchase materials TDI needed in its operations from Suppliers and then resold the materials to TDI at a premium, which generated substantial profits for ENCO and ultimately, its members.  Id., ¶ 26-38.  ENCO distributed $2,578,770.00 to its members in 2004.  Id., ¶ 40.

The Complaint also alleges the diversion of TDI's corporate opportunities to Parking Builders, LLC ("Parking Builders"), another entity partially owned by Markle and the Officers.  Complaint, ¶¶ 42-63.[6]  Specifically, the Complaint alleges that a request for a proposal to construct a parking garage was sent to TDI, employees of TDI performed significant preliminary planning, drafting, design and prototype work for the project, and thereafter, Markle caused Parking Builders to bid on the job rather than TDI.  Id.  Parking Builders was awarded the job.  Id.

The Complaint also alleges that Markle terminated most of TDI's employees in 2004 and enticed the remaining key employees to Parking Builders in 2005, leaving TDI with six employees.  Id., ¶ 60-63.

Finally, the Complaint alleges that Markle and other TDI employees created a system for efficiently constructing parking garages during his tenure at TDI, which Markle named the "TDI Flying Form System," and marketed the system as proprietary to TDI.  Id., ¶ 64-66, 68.  Markle caused Parking Builders to use the TDI Flying Form System in its business.  Id., ¶ 67.

Markle, as president of TDI, was entrusted with and controlled (either lawfully or otherwise) the property of TDI, including its bank accounts, but Markle was never an officer,

---

[6]These allegations are not set forth in detail in either the Motion or the Response, but again, because Markle contends that the *Complaint* fails to state a claim, Markle must conditionally admit all the allegations of the Complaint for the purpose of determining whether summary judgment should be entered for failure to state a claim.

director, or employee of Monarch, and was not entrusted with and did not control property of Monarch.   SUF, ¶ 8, 10; RSUF, ¶ 8, 10.

On May 30, 2007, the TDI Order was entered by the Tulsa County District Court, which granted summary judgment *in favor of TDI* against Markle and the Officers on TDI's claim for breach of fiduciary duty, and granted summary judgment *in favor of TDI* against Markle, GBS, and ENCO on TDI's claim for unjust enrichment.  TDI Order at 6.

Also on May 30, 2007, the Tulsa County District Court entered a Journal Entry of Judgment *in favor of Monarch* (1) denying summary judgment to Markle on a claim concerning the Agreement; (2) granting summary judgment to Monarch on "Count I - Shareholder Derivative Action" and on "Count II - Claims Arising from Breach of Employment Contract and Breach of Implied Covenant of Good Faith and Fair Dealing"; (3) granting summary judgment "as to pre-termination claims," finding that "the undisputed facts show that [Markle] breached the Non Compete and Confidentiality agreement prior to his termination from TDI"; and (4) reserving the issue of damages for further proceedings. Response, Exh. B (the "Monarch Judgment"); not controverted by Markle.

Monarch claims that Markle owed fiduciary duties to Monarch as an officer and director of TDI because Monarch was TDI's majority shareholder.  SUF, ¶ 11A; RSUF, ¶ 11A.  Monarch also claims Markle owed fiduciary duties to Monarch by virtue of the Agreement.    SUF, ¶ 11B; RSUF, ¶ 11B.

The facts, damages, and claims for relief alleged in the Complaint are virtually identical to those alleged by TDI in its own adversary complaint filed in Adversary Case No. 08-1032-R.  SUF, ¶ 14, Exh. 3 ("TDI Complaint"); RSUF, ¶ 14.

10

B.    Monarch's denials of certain SUF's

Monarch argues that summary judgment is precluded because it takes issue with some of Markle's statements of undisputed material fact. These disputes do not preclude summary judgment, however, because they either concern the legal effect of conditionally conceded facts or Monarch fails to support a factual dispute with some evidence.

Monarch denies SUF ¶¶ 3, 4, 6, and 9 because Markle will only admit that he "allegedly" perpetrated a scheme to defraud, "allegedly" engaged in deceptive and manipulative business practices, and "allegedly" made knowing and intentional misrepresentations to TDI.  This Court is assuming that the *factual* allegations (but not the legal conclusions) in the Complaint and in the TDI Order are true.  Monarch contends that these facts indicate that TDI and Monarch were "jointly defrauded."  Whether the fraudulent scheme, which Markle concedes for the purposes of this Motion was perpetrated against TDI and damaged TDI, also constituted actionable fraud, larceny, embezzlement, fiduciary defalcation, or intentional injury to property of  TDI's majority shareholder, Monarch, is the dispositive legal issue in this case.  Thus, Monarch's denials of fact are more appropriately asserted as legal arguments.

Monarch's denial of SUF ¶ 5 does not controvert Markle's statement that the Complaint fails to allege that false representations were made to Monarch, or that Monarch actually and justifiably relied on any false representations.  On its face, the Complaint does not make any such allegation.

Monarch's denial of SUF ¶ 7 does not create an issue of fact.  Monarch contends that Markle withheld information from TDI's board members, some of which were directors of

11

Monarch, and that non-disclosure to TDI constituted a material non-disclosure to Monarch. Whether Markle had an independent duty to disclose to Monarch is a legal issue.

Monarch's denial of SUF ¶ 12 does not create an issue of fact. Markle concedes the scheme to defraud TDI for the purposes of the Motion; whether overt acts against and intention to harm TDI also constitute overt acts against and intention to harm TDI's majority shareholder is again the dispositive issue in this proceeding.[7]

## V.     Conclusions of Law

In the Tulsa County District Court, Monarch obtained judgment on liability (but not damages) in its favor in on its Shareholder Derivative Action claim, its Breach of Employment and Breach of Implied Covenant of Good Faith and Fair Dealing claim and its claim for breach of the Agreement (*i.e.*, the non-compete and confidentiality agreement). Because the judgment is not final (damages have not been ascertained), the order of the Tulsa

---

[7]To the extent that Monarch relies on the Findings of Fact and Conclusions of Law With Respect to Damages Against General Building Systems, LLC, Enco Concrete, LLC, and Parking Builders, LLC, ("Damages Order") entered by the Tulsa County District Court on February 29, 2008 (Response, Exh. F), to establish any facts to controvert Markle's SUF's, this Court notes that the Damages Order (1) enters judgment in favor of TDI, not Monarch; (2) enters judgment against GBS, ENCO and Parking Builders, LLC, and does not enter judgment against Markle; (3) does not establish that any facts concerning conduct by Markle directed at Monarch (independent of the scheme perpetrated on TDI), and (4) was entered after Markle filed his Chapter 7 petition.  Accordingly, the Court concludes that the Damages Order has limited, if any, evidentiary value in this proceeding.

The same is true of the Journal Entry of Judgment Against Parking Builders, LLC (Response, Exh. G), and Journal Entry of Judgment Regarding General Building Systems. LLC and ENCO Concrete, LLC, in which the Tulsa County District Court awarded TDI actual and punitive damages against Parking Builders, LLC, GBS, and ENCO.  This judgment was also entered post-petition and does not concern either Markle or Monarch.

County District Court can not be asserted for the purpose of offensively precluding the relitigation of issues in this proceeding.[8]  In any event, it does not appear that any of the claims for which Monarch was granted judgment fall within any category of non-dischargeable debts.[9]

     A.    Section 523(a)(2)(A)

Markle contends that in its Complaint, Monarch has failed to allege facts that, if true, would establish any element of Section 523(a)(2)(A).

---

[8]Under Oklahoma law, the party relying on the doctrine of issue preclusion must establish:  (1) a final judgment on the merits in prior litigation; (2) the issue sought to be precluded is identical to one previously litigated; (3) the issue was actually litigated and necessarily determined in the prior proceeding; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum.  See Salazar v. City of Oklahoma City, 1999 OK 20, 976 P.2d 1056, 1060-61.

[9]The Tulsa County District Court found Markle liable for breaching an employment agreement and breaching the non-compete agreement.  A debt arising from a simple breach of contract is dischargeable.  See Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992).  The fact that Monarch brought only breach of contract claims in the Tulsa County District Court does not preclude Monarch from claiming that Markle's conduct also constituted fraud, defalcation, embezzlement, larceny, or willful and malicious injury to Monarch or its property, however.  See Brown v. Felsen, 442 U.S. 127, 138 (1979) (in a pre-Code proceeding, court concluded that creditor's prepetition reduction of debt to consent judgment in a collection action which made no findings regarding the basis for the debt "does not bar inquiry into the true nature of the debt" for the purpose of determining whether the debt is excepted from discharge); RTC v. McKendry (In re McKendry), 40 F.3d 331 (10th Cir. 1994) (applying Felsen rule to dischargeability proceedings under the Bankruptcy Code).

With respect to the Shareholder Derivative claim, the record does not explain what relief Monarch sought in that claim, but any such relief would flow to the corporation, TDI, not to Monarch, because a derivative action is by definition an action taken by shareholders to enforce a right of the corporation itself.  See Orr v. Edens, 1993 OK CIV APP 104, 861 P.2d 331 (in a shareholder derivative suit, the corporation is the real or beneficial plaintiff and the court has an obligation to oversee the shareholder plaintiff's prosecution of the corporation's rights to insure the corporation is protected).

Section 523(a)(2)(A) excepts from discharge any debt –

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).  Generally, to obtain a judgment that a debt is not dischargeable under this section, a creditor must prove–

(1) That a representation was made by the debtor;

(2) That the representation was false;

(3) That the representation was made with the intent to deceive the creditor;

(4) That the creditor relied upon the representation; and

(5) That, as a result of such reliance, the creditor suffered loss.

Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1373 (10th Cir. 1996).  In addition, the creditor must prove that reliance on the representation was justifiable.  Field v. Mans, 516 U.S. 59, 74-75 (1995).

To satisfy his burden on summary judgment, Markle attached the Complaint to his Motion.  In the Complaint, the only factual allegations that even mention Monarch consist of the allegation that Monarch purchased its majority interest in TDI from Markle in 1986 (Complaint, ¶ 8), and that Markle executed the Agreement "in favor of Monarch and TDI" promising not to compete with or entice employees away from TDI for a period of time (Complaint, ¶ 9).  The remaining factual allegations concern Markle's conduct while employed as president of TDI.  In "Count I - False Pretenses, False Representations and/or

14

Actual Fraud," Monarch alleges that Markle made false representations or failed to disclose material facts to TDI with the intent to defraud TDI, and that TDI justifiably relied on the false representations or non-disclosures to its detriment. Complaint, ¶ 71-72. Monarch then states that such behavior against TDI violated fiduciary duties owed to Monarch, and therefore constituted a fraud on Monarch. Complaint, ¶ 73.

Markle is correct that the Complaint does not allege any representation or non-disclosure directed toward Monarch, or any reliance by Monarch on any representation or non-disclosure, or any detriment to Monarch resulting therefrom. As the party bearing the burden of proof at trial, it is Monarch's burden to come forward at this point with some evidence to support each element of its Section 523(a)(2)(A) claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (Summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

The Court concludes that even if Monarch can establish that –

(1) Markle failed to advise TDI through its board of directors (some of whom were appointed by Monarch), and failed to disclose to Monarch directly,[10] his interest in GBS and ENCO and the role GBS and ENCO played as "ghost vendors," and failed to advise that Parking Builders was competing with TDI for projects;

---

[10]For the purposes of this claim, the Court will assume, but not decide, that Markle had some duty to disclose his conflicts of interest to Monarch.

15

(2) Markle failed to disclose with the intent of deceiving Monarch;

(3) Monarch justifiably and detrimentally relied on the non-disclosures in not directing its appointed directors to terminate Markle and the Officers or otherwise cause TDI to cease buying materials from GBS and ENCO, and

(4) as a result, the value of *Monarch's interest in TDI* suffered a loss,

under applicable law, Monarch cannot recover directly from Markle because its loss is derivative of damage inflicted on TDI, and therefore Monarch lacks standing to assert the claim.

In its Response, Monarch attempts to establish its loss as follows:

Monarch was the majority shareholder of TDI. The value of its shareholder interest was based upon the profitability of TDI. By diverting profits of TDI to GBS and ENCO, [Markle] and his co-conspirators directly depressed the value of [Monarch's] interest as a shareholder. Plaintiff was damaged. In addition, there can be no doubt Monarch's investment was damaged.

Response at 15.[11]  It is well settled that the right to recover for injuries to a corporation occasioned by the mismanagement or misdeeds of its officers or directors belongs to the corporation, not to any individual shareholder. In <u>Dobry v. Yukon Electric Co.</u>, 1955 OK 281, 290 P.2d 135, the issue before the Oklahoma Supreme Court was identical to the question posed here, *i.e.*,

whether a stockholder in a corporation, or one who has been a stockholder, has a remedy at law for recovery of damages suffered by himself by reason of the wrongful acts of the directors which resulted in direct injury to the corporation and only consequential injury to the stockholder, either by depriving him of dividends which he might otherwise have received or by depressing the value of his stock.

---

[11]The Court notes that Monarch did not submit an affidavit or other evidence detailing the elements of or otherwise quantifying its purported loss.

Id. at 137.[12]   The Oklahoma Supreme Court held that "remedial rights of minority stockholders with respect to wrongs committed against the corporation by the directors in the management of corporate affairs are derivative rights and any action taken by the stockholders to redress such wrongs must be for the benefit of the corporation."   Id.[13] Further, "[i]f the plaintiff [shareholder] has sustained no loss in addition to the loss to the corporation, the action cannot be maintained as an individual [shareholder] even though the wrongful acts were done with the specific intent of injuring the plaintiff [shareholder]."   Id., *quoting* FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5914.

The Court in Pignato v. Dein Host, Inc. (In re Dein Host, Inc.), 835 F.2d 402 (1st Cir. 1987), stated that the rule that a shareholder of a corporation lacks standing to maintain an action for its own benefit is "salutary" in that corporations could not operate if every management decision could be second-guessed by every shareholder, and further, to the

---

[12]Although the Agreement is governed by the laws of the State of Kansas, issues regarding TDI's corporate status and the rights and duties of shareholders, officers, and directors are governed by Oklahoma law because TDI is an Oklahoma corporation.   See RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 309 ("The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to a particular issue, some other state has a more significant relationship . . . to the parties and the transaction . . . ."); id., § 302(2).   See also Bagdon v. Bridgestone/ Firestone, Inc., 916 F.2d 379, 382-83 (7th Cir. 1990) (law of state of incorporation applies to corporate governance issues, while choice of law clause in shareholder agreement governs validity, effect and enforcement of agreement between shareholders).

[13]Whether the plaintiff seeking redress is a minority shareholder or majority shareholder is not relevant to the rule.   See Pignato v. Dein Host, Inc. (In re Dein Host, Inc.), 835 F.2d 402, 406 (1st Cir. 1987), *citing* Green v. Victor Talking Mach. Co., 24 F.2d 378, 380 (2d Cir. 1928) ("Even a sole shareholder acquires no personal cause of action because of an injury–real or threatened–to the corporation.").

extent the corporation asserts its rights against and recovers from an errant management or board, shareholders will benefit in proportion to their interests.  Id. at 406.

Of course, shareholders may be granted permission to sue to enforce the rights of a corporation derivatively in the event the corporation itself fails or refuses to do so, but in that case, the owner of the claim and beneficial plaintiff is the corporation, not the shareholder. See Fed. R. Civ. P. 23.1 (made applicable to this proceeding by Bankruptcy Rule 7023.1). Monarch does not contend that it is suing on TDI's behalf, and indeed it may not do so because TDI has commenced its own action seeking relief identical to the relief sought by Monarch.[14]   The issue of Monarch's standing is dispositive.  If Monarch's injury is strictly derived from the injury suffered by TDI, Monarch lacks standing to assert the claim,[15] and judgment must be entered in favor of Markle.

> A claim is said to be derivative if injury is either to the corporation directly or to the shareholder but mediated through the corporation.  A shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation.  "Whether a cause of action is individual or derivative must

---

[14]Thus, Monarch cannot establish one of the prerequisites to maintaining a derivative action, i.e., that it seeks to enforce a right of the corporation that the corporation had failed or refuses to enforce.  See Fed. R. Civ. P. 23.1(a).  The Court questions why Monarch (who owns a controlling interest in TDI) has approved the institution of two separate lawsuits seeking the same recovery.

[15]"An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a) (made applicable herein by Bankruptcy Rule 7017).  If a complaint alleges only injuries to a corporation, the corporation, not its shareholders, is the real party in interest, and a "stockholder of a corporation has no personal right to claim as his own cause of action arising from an injury to the corporation."  Bolivar v. Pocklington, 137 F.R.D. 202, 205 (D. P.R. 1991), aff'd 975 F.2d 28 (1st Cir. 1992).

be determined from the 'nature of the wrong alleged' and the relief, if any which could result if the plaintiff were to prevail."

Carson v. Lynch Multimedia Corp., 123 F. Supp.2d 1254, 1259 (D. Kan. 2000), *quoting* Richards v. Bryan, 879 P.2d 638 (Kan. App. 1994).  See also Bagdon v. Bridgestone/ Firestone, Inc., 916 F.2d 379, 381 (7th Cir. 1990) ("An action in which the holder can prevail only by showing an injury or breach of duty to the corporation should be treated as a derivative action.").

In its Response, Monarch contends that the scheme perpetrated by Markle constituted fraud not only to TDI, but to Monarch directly because Monarch was a party to the Agreement, and the Agreement provided that Markle would not compete with TDI or use confidential information of TDI.  While it is true that Markle may have breached the Agreement in addition to defrauding TDI, the gravamen on Monarch's Section 523(a)(2) claim is not breach of contract, but non-dischargeable fraud.  The "nature of the wrong alleged" is fraud, and the facts alleged support a claim of fraud against the corporation, TDI, not its shareholder, Monarch.  Further, the relief requested, recovery of the loss of the value of Monarch's stock, is strictly derivative of the loss incurred by TDI. Monarch has not submitted any evidence that it sustained any loss independent of the loss of the value of its shares in TDI.  Since TDI is suing Markle on an identical cause of action on its own behalf in Adversary Case No. 08-1032-R, recovery by TDI should restore the value of Monarch's stock.  Clearly, Monarch is not entitled to a double recovery on the same fraud claim.  Thus, Markle is entitled to summary judgment on Monarch's Section 523(a)(2)(A) claim.

B.      Section 523(a)(4)

Section 523(a)(4) excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

*1.      Defalcation or fraud while acting in a fiduciary capacity.*

"[A]n express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4)."  Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1371 (10th Cir. 1996).  "Neither a general fiduciary duty of confidence, trust, loyalty, and good faith . . . nor an inequality of bargaining power . . . is sufficient to establish a fiduciary relationship for purposes of dischargeability."  Id. at 1372 (citations omitted).  Moreover, the trust creating the fiduciary capacity must have been expressly established or imposed prior to an alleged tortious action that created the debt.  Id.

Thus, a trust implied by law as a consequence of wrongdoing–a constructive trust or resulting trust, for example–does not create the fiduciary capacity contemplated by Section 523(a)(4).  Id.  See also Tway v. Tway (In re Tway), 161 B.R. 274, 278 (Bankr. W.D. Okla. 1993), *citing* Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934).  Rather, Section 523(a)(4) presupposes a defalcation, that is, a misappropriation or misapplication, of money or property entrusted to the debtor under an express or technical trust.  Id. at 1371.  The express or technical trust may arise under a trust agreement, or it may be imposed by statute.  See Tway, 161 B.R. at 279.  In either event, the trust agreement or statute must identify the *res, i.e.*, the property that has been entrusted to the debtor, and describe the debtor/trustee's duties with respect to the property.  Id. at 279, 281.

20

Monarch argues that Markle's fiduciary duties to Monarch arose in his capacity as an officer and director of TDI, and as a result of the Agreement.  Markle contends that duties owed by an officer/director to a shareholder do not create a fiduciary relationship of the nature required by Section 523(a)(4), and that the Agreement did not create an express or technical trust, or define a trust *res* over which Markle had control.

In response to the first argument, Monarch relies on In re Frain, 230 F.3d 1014 (7th Cir. 2000), for the proposition that a "fiduciary," for the purpose of Section 523(a)(4), includes those whose fiduciary duties arise from a relationship in which the creditor "repose[s] a special confidence in the fiduciary," including lawyer-client, director-shareholder, and general partner-limited partner relationships.  Response at 17, *citing* Frain, 230 F.3d at 1017.  In response to the second argument, Monarch relies on Martello v. Fowers (In re Fowers), 360 B.R. 888 (Bankr. N.D. Ind. 2007), to argue that "business assets" constitute the *res* of an implied trust over which a director has control for the benefit of shareholders, and therefore Markle was a fiduciary that committed fraud or defalcation with respect to TDI's assets to the detriment of shareholders.  Id. at 896.  The problem with Monarch's construct is that the Tenth Circuit Court of Appeals has specifically limited the types of fiduciaries and trusts that fall within Section 523(a)(4).  While the Seventh Circuit defines a fiduciary relationship under Section 523(a)(4) as "a difference in knowledge and power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter," and does not require a "literal trust" (Frain, 230 F.3d at 1017), the Tenth Circuit holds that "[n]either a general fiduciary duty of confidence, trust, loyalty, and good

faith . . . nor an inequality of bargaining power . . . is sufficient to establish a fiduciary relationship for purposes of dischargeability" and "an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4)" (<u>Fowler Bros.</u>, 91 F.3d at 1371-72).[16]

This Court concludes that neither the Agreement, nor the director-shareholder relationship establish an express or technical trust containing the "business assets" of TDI.[17] Moreover, while Markle's relationship with Monarch (as an officer and director of TDI and as a party to the Agreement) may have required duties of confidence, trust, loyalty and good faith, and Markle may have been placed in a position of power over TDI's assets, these

---

[16]<u>See also</u> <u>Watson v. Parker (In re Parker)</u>, 264 B.R. 685, 700 (B.A.P. 10th Cir. 2001); <u>Smolen v. Hatley (In re Hatley)</u>, 227 B.R. 757 (B.A.P. 10th Cir. 1998); <u>Holaday v. Seay (In re Seay)</u>, 215 B.R. 780, 785-86 (B.A.P. 10th Cir. 1997) (no Section 523(a)(4) "fiduciary" is created by a partnership or joint venture agreement, nor is any trust <i>res</i> established).

[17]Monarch argues that when Markle signed the Agreement not to compete with TDI, a trust "was embedded expressly in the terms of a written contract intended for the direct benefit of Monarch." Response at 18. The Court has reviewed the Agreement and concludes that it does not establish an express trust.

A technical trust is "a trust imposed by law that arises by statute." <u>Parker</u>, 264 B.R. at 700. Monarch has not cited any statute that imposes a trust on corporate property in the hands of its directors.

The facts in this case resemble those in <u>Technical Aid Corp. v. Krizanic (In re Krizanic)</u>, 255 B.R. 688 (Bankr. E.D. Mich. 2000), wherein the bankruptcy court concluded, correctly, that a claim by a corporation against an employee for the breach of a confidentiality and non-compete agreement was not excepted from discharge under Section 523(a)(4) because the agreement did not impose an express trust on any tangible <i>res</i>, and to the extent any "trust" arose, it was implied or constructed as a result of the employee's breach, which did not satisfy the requirements of Section 523(a)(4).

attributes are not sufficient to establish the "fiduciary" status required to invoke Section 523(a)(4) in this Circuit.[18]

### 2. Embezzlement

Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud.  See Klemens v. Wallace (In re Wallace), 840 F.2d 762, 765 (10th Cir.1988); Hill v. Putvin (In re Putvin), 332 B.R. 619, 627 (B.A.P. 10th Cir. 2005); Cousatte v. Lucas (In re Lucas), 300 B.R. 526 (B.A.P. 10th Cir. 2003); Bryant v. Tilley (In re Tilley), 286 B.R. 782, 789 (Bankr. D. Colo. 2002).  Consequently, embezzlement requires proof of a defalcation or misappropriation of property by one to whom it is entrusted, plus proof of fraudulent intent.

Although Markle, as president of TDI, was entrusted with and controlled (either lawfully or otherwise) the property of TDI, Monarch admits that Markle was never an officer, director, or employee of Monarch, and was not entrusted with and did not control property of Monarch.   SUF, ¶ 8, 10; RSUF, ¶ 8, 10.  Accordingly, the undisputed facts establish that Markle did not embezzle funds or property from Monarch.

---

[18]In Driggs v. Black (In re Black), the Tenth Circuit held that under Utah law, although an officer and director may owe a fiduciary duty to the corporation and its shareholders, "the duty is owed to the shareholders collectively, and no fiduciary duty is owed to the stockholders individually," and therefore any cause of action on account of any breach of that duty belongs to the corporation, not to any individual shareholder.  Id., 787 F.2d 503, 506-07 (10th Cir. 1986), *abrogated on other grounds by* Grogan v. Garner, 498 U.S. 279 (1991).

3.    *Larceny*

Larceny is the "felonious taking of another's personal property with intent to convert it or deprive the owner of the same." Bryant v. Lynch (In re Lynch), 315 B.R. 173, 179 (Bankr. D. Colo. 2004) (remanded on other grounds). Monarch does not allege or submit any evidence that Markle had access to or feloniously took personal property owned by Monarch, and therefore Monarch cannot prevail in excepting its claim from discharge on account of larceny.

Accordingly, Monarch has failed to state or to establish with admissible evidence any claim under Section 523(a)(4), and Markle is entitled to summary judgment thereon.

C.    Section 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Monarch argues that the Court may infer from the facts that Markle could not help but know that the "scheme" to skim profits and divert projects from TDI would injure Monarch, and therefore Markle owed Monarch a debt for willful and malicious injury to Monarch and its stock. The United States Supreme Court has clarified the state of mind required to satisfy the "willful" element of Section 523(a)(6) as follows:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *act* that leads to injury. . . [T]he (a)(6) formulation triggers in the lawyer's mind the category of "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (2001) (emphasis in original) (citation omitted).

24

Giving Monarch the full benefit of all inferences that may be drawn from the conceded facts, *i.e.*, that Markle diverted TDI profits to GBS and ENCO, caused Parking Builders to compete with TDI, and used TDI's proprietary building system, all of which were breaches of his Agreement with Monarch and TDI that he would not compete with TDI or use confidential information of TDI, it is conceivable that a factfinder could find that Markle maliciously breached the Agreement with the specific intention of causing harm to Monarch.

Markle neither contests nor concedes the "willful and malicious" element. Rather, he argues that Monarch cannot satisfy the "injury by the debtor to another entity or property of another entity" prong of Section 523(a)(6) *with respect to Monarch* because Monarch has not alleged any damages that are not mediated through the corporate entity, TDI, and therefore Monarch lacks standing to assert the claim.

In its Response to Markle's challenge to its Section 523(a)(6) claim, Monarch stated that Markle "appropriated [TDI's] business and with it the value that belonged to [Monarch]. When [Markle] decided to appropriate money and business opportunities of TDI, [his] actions had the necessary effect of substantially damaging the value of [Monarch's] interest in TDI. . . .  The conduct of [Markle] . . . was clearly intentional and was obviously going to result in damage to [Monarch's] interests in TDI."  Response at 20-21. Monarch's response confirms that the "injury to property" its alleges under Section 523(a)(6) is limited to the diminution of the value of its stock, a loss strictly derivative of TDI's loss.

"If the plaintiff [shareholder] has sustained no loss in addition to the loss to the corporation, the action cannot be maintained as an individual [shareholder] even though the

wrongful acts were done with the specific intent of injuring the plaintiff [shareholder]." FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5914. "A shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation." Carson v. Lynch Multimedia Corp., 123 F. Supp.2d 1254, 1259 (D. Kan. 2000), *quoting* Richards v. Bryan, 879 P.2d 638 (Kan. App. 1994).

Monarch argues that it bears a disproportionate share of the injury because it is TDI's majority shareholder and the other shareholders were the alleged perpetrators of the "scheme." However, its disproportionate loss of share value is still derivative of any damage inflicted on, and actionable by, TDI. Further, to the extent that Monarch asserts damages arising from a breach of the Agreement, Monarch's rights as a party to the Agreement are not independent of TDI's right to be free of competition or TDI's interest in protecting its trade secrets.

Monarch has the burden of coming forward with some evidence in support of its right to recover under its Section 523(a)(6) claim. See Celotex, 477 U.S. at 322-23. Monarch has not articulated any element of damage resulting from the alleged malicious and intentional injury to its property other than its loss of share value. Accordingly, Monarch has failed to submit evidence in support of an independent right to assert an action under Section 523(a)(6), and Markle is entitled to summary judgment thereon.

## VI.    Conclusion

For the reasons stated herein, the Court concludes that summary judgment should be entered in favor of Markle and against Monarch on all claims.  A separate judgment will be entered contemporaneously herewith.

SO ORDERED this 14th day of October, 2008.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE